ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| ISABELA ESTATES, LLC; ISABELA REEFS, LLC<br><br>Recurrente<br><br>v.<br><br>OFICINA DE GERENCIA DE PERMISOS<br><br>Recurrido | KLRA202500143 | *Revisión Judicial* Procedente de la Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio<br><br>Permiso de Construcción: 2024-584128-PCOC-309501<br><br>Sobre: Permiso de Construcción 2024-584128-PCOC-309501 |
|---|---|---|

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 27 de mayo de 2025.

Las partes recurrentes, Isabela Estates, LLC e Isabela Reefs, LLC (en adelante y en conjunto, recurrentes), solicitan*,* mediante un *Recurso de Revisión Judicial*, que revoquemos el *Permiso de Construcción Consolidada* 2024-584128-PCOC-309501, notificado el 24 de febrero de 2025, por la Oficina de Gerencia de Permisos (en adelante, OGPe o agencia recurrida). Mediante este, la agencia recurrida autorizó la construcción de una torre de telecomunicaciones bajo el nombre "Villa Montaña 2 Site", a favor del proponente JI Site Developers (en adelante, recurridos).

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

Número Identificador

SEN2025 _____

**I.**

El 19 de julio de 2024 JI Site Devolpers presentó una solicitud de Permiso de Construcción Consolidada, con el número 2024-584128-PCOC-309501, para poder construir una torre de telecomunicaciones de una altura máxima de ochenta (80) pies y bajo el nombre "Villa Montaña 2 Site". El proyecto sería ubicado en un predio en la Carretera Puerto Rico-4466 KM 1.9 Int., Bo. Bajuras, Isabela, Puerto Rico, 00662. Este, además, contaba con una *Certificación de Cumplimiento Ambiental por Exclusión Categórica* de la OGPe (en adelante, Exclusión Categórica).[1]

Al ser dueñas del predio que colinda por el Este con el aludido proyecto, el 14 de noviembre de 2024, las recurrentes, presentaron ante OGPe una *Solicitud de Intervención y Celebración de Vista Pública.*[2] En su escrito, alegaron que eran proponentes de un proyecto residencial turístico, por lo que tenían un interés legítimo que se pudiera ver afectado con la aprobación del permiso solicitado por los recurridos.

Asimismo, las recurrentes solicitaron que se llevara a cabo el proceso de aprobación de manera discrecional, bajo el fundamento de que tenían múltiples preocupaciones que debían ser atendidas en una vista pública. Entre estas, las recurrentes plantearon que la altura de la torre reflejada en la *Determinación de Cumplimiento Ambiental Vía Exclusión Categórica* era de setenta y cinco (75) pies, y no de ochenta (80) pies. Señalaron que la ubicación del proyecto del recurrido pudiera tener un efecto sobre la playa, por lo que se debía realizar un estudio de sombras, conforme al Capítulo 6.4 del Reglamento Conjunto Núm. 9473 de 16 de junio de 2023. Resaltaron que el proyecto no cumplía con

---

[1] Apéndice, págs. 0029-0032.
[2] Apéndice, págs. 0063-0070.

los requisitos para hacerse mediante una *Exclusión Categórica*, debido a que el área propuesta no contaba con infraestructura de alcantarillado sanitario ni la capacidad vial para el acceso de los equipos de construcción, conforme a lo establecido en la Orden Administrativa Núm. 2021-02, adoptada por el Departamento de Recursos Naturales y Ambientales. De igual forma, alegaron que el proyecto podría encontrarse en una zona inundable y ecológicamente sensitiva.

Así también, las recurrentes reclamaron que, al estar ubicado en una zona costanera, JI Site Developers debía cumplir con una *Recomendación de Evaluación Ambiental* y una *Determinación de Evaluación Ambiental*, en lugar de la *Exclusión Categórica* que presentaron. Por igual, sostuvieron que, al estar ubicado en un área ecológicamente sensitiva se debía celebrar una vista pública, conforme a la Sección 9.11.2.2 del Reglamento Conjunto Núm. 9473, *supra*, y que el permiso se debía tramitar a través de una *Consulta de Ubicación*, en lugar del Permiso de Construcción Consolidada.

Por otro lado, las recurrentes manifestaron su preocupación por la armonía del proyecto en cuestión con la estética y entorno del área, debido a que existían instalaciones y atractivos turísticos en la zona, incluyendo su propio proyecto residencial turístico. Por ello, alegó que los recurridos necesitarían un endoso de la Compañía de Turismo de Puerto Rico.

Por último, las recurrentes cuestionaron la necesidad de la aludida torre, ya que aproximadamente a media milla de la ubicación propuesta había otra de la misma índole. Así y evaluada la solicitud de intervención de las recurrentes, el 2 de diciembre

de 2024, OGPe notificó una *Resolución sobre Solicitud de Intervención*, declarándola *Ha Lugar*.[3]

Posteriormente, el 9 de diciembre de 2024, las recurrentes presentaron *Moción Reiterando Solicitud de celebración de Vista Pública*.[4] Mediante esta, le peticionaron a OGPe que paralizara la aprobación del permiso en controversia hasta que se celebrara la vista solicitada.

Más adelante, el 23 de diciembre de 2024, la OGPe le solicitó información adicional a los recurridos.[5] Por lo cual, el 14 de enero de 2025, JI Site Developers presentó un *Memorial en Cumplimiento con Requerimiento de Subsanación*.[6] Ese mismo día, el recurrido también presentó un *Memorial Explicativo Suplementario en Respuesta de Planteamientos de Interventores,* mediante el cual respondieron a los cuestionamientos hechos por las recurrentes*.*[7]

En particular, adujo que no había un fundamento legal para tener que cumplir con especificaciones sobre el aspecto estético del proyecto propuesto, ni que le exigiera la presentación de una *Recomendación de Evaluación Ambiental* o una *Determinación de Evaluación Ambiental*. Señaló que el estudio de sombra no era necesario, pues la estructura de la torre no generaría una sombra mayor a la del tronco de un árbol. El proyecto cumplía con los estándares del Reglamento Conjunto Núm. 9473, *supra,* para estar ubicado dentro de la zona marítimo terrestre.

Por otro lado, esbozó que no era necesario el endoso de la Compañía de Turismo, dado que el área propuesta para el proyecto no había sido designada como una Zona de Interés

---

[3] Apéndice, págs. 0071-0079.
[4] Apéndice, págs. 0080-0082.
[5] Apéndice, pág. 0094.
[6] Apéndice, págs. 0094-0097.
[7] Apéndice, págs. 0083-0093.

Turístico, tal y como lo requería el Reglamento Conjunto Núm. 9473, *supra*. Indicó que la discrepancia en la altura de la torre fue modificada a ochenta (80) pies, antes de que se emitiera la *Exclusión Categórica*.

De igual forma, informó que, por su naturaleza, el proyecto no generaría descargas sanitarias, por lo cual no era necesaria la infraestructura de alcantarillado sanitario. Mencionó que la ubicación propuesta tenía acceso para el equipo de construcción a través de la vía pública municipal en colindancia por el Oeste. Alegó que la zona en cuestión no era inundable, ni había sido designada como un área ecológicamente sensitiva. Por lo cual, razonó que cumplía con los criterios para que el proceso se llevara de forma ministerial, y le solicitó a OGPe la emisión de la *Notificación de Requisitos de Aprobación de Permiso de Construcción de Permiso de Construcción,* y, por consiguiente, el Permiso de Construcción Consolidado solicitado.

Así las cosas, el 22 de enero de 2025 la recurrente presentó su respuesta a los memoriales.[8] Mediante la cual, entre otras cosas, reiteró su posición en que era necesaria la celebración de una vista pública. No obstante, el 3 de febrero de 2025, la OGPe emitió la *Notificación de Requisitos para Aprobación de Permisos de Construcción*,[9] y el 24 de febrero de 2025, notificó la aprobación del aludido permiso a favor de JI Site Developers.[10]

Inconforme, las recurrentes acudieron ante nos, el 11 de marzo de 2025, mediante una *Moción de Auxilio de Jurisdicción*, en conjunto al *Recurso de Revisión Judicial*. En este, señalaron la comisión de los siguientes errores:

---

[8] Apéndice, págs. 0104-0110.
[9] Apéndice, págs. 0116-0117.
[10] Apéndice, págs. 0120-0126.

**PRIMERO:** ERRÓ LA OGPE AL ADJUDICAR UN PERMISO DE CONSTRUCCIÓN CONSOLIDADO SIN TOMAR EN CONSIDERACIÓN LAS COMPARECENCIAS DE LA PARTE INTERVENTORA, EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

**SEGUNDO:** ERRÓ LA OGPE AL NO NOTIFICAR A LA PARTE INTERVENTORA DE SOLICITUDES DE RECTIFICACIÓN NOTIFICADOS AL PROPONENTE EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

**TERCERO:** ERRÓ LA OGPE AL CONSIDERAR EL PERMISO DE CONSTRUCCIÓN CONSOLIDADO COMO UNO MINISTERIAL Y NO COMO UNO DISCRECIONAL DEBIDO A LOS ELEMENTOS SUBJETIVOS EN CONTROVERSIA, POR LO QUE ERA NECESARIO CELEBRAR UNA VISTA PÚBLICA PARA PERMITIR LA PRESENTACIÓN DE PRUEBA Y PODER TOMAR UNA DETERMINACIÓN BASADA EN UN EXPEDIENTE COMPLETO.

**CUARTO:** ERRÓ LA OGPE EN NO INVESTIGAR LA VERACIDAD DE LA INFORMACIÓN SOMETIDA POR EL PROPONENTE, SEGÚN CONTEMPLADO EN LA LEY 135-1967.

Así las cosas, el 12 de marzo de 2025, este Foro Apelativo ordenó la paralización inmediata de los procedimientos y del permiso de construcción en cuestión ante la OGPe, hasta que se evaluara el recurso de revisión presentado por la recurrente.

Posteriormente, el 1 de abril de 2025, JI Site Developers presentó ante nos una *Solicitud de Desestimación,* mediante la cual alegan que el recurso ante nos es prematuro, ya que otras partes interventoras que participaron del proceso en la agencia solicitaron una revisión administrativa ante la División de Revisiones Administrativas de la OGPe. No obstante, previo a ello, las recurrentes presentaron el recurso de revisión ante nos. Conforme a lo dispuesto por nuestro Tribunal Supremo de Puerto Rico en Miranda Corrada v. DDEC et al., 211 DPR 738, 750 (2023), la aprobación del permiso de construcción constituye una determinación final. Por ende, adquirimos jurisdicción con su presentación, y los procedimientos en la agencia fueron paralizados.

Del mismo modo, el 8 de abril de 2025, la OGPe presentó su alegato en oposición al recurso de revisión. Entre otras cosas,

la agencia recurrida aduce que evaluó las preocupaciones y los documentos presentados por JI Site Developers para aprobar el permiso solicitado. OGPe indica que el recurrido cumplió con los requerimientos para que el proceso se llevara a cabo de manera ministerial, lo cual hacía innecesaria la celebración de una vista pública. La agencia recurrida informa que la ubicación del proyecto en cuestión, según los datos públicos disponibles, no estaba designada como una zona inundable, ni una zona de interés turístico, ni una zona histórica, ni un área ecológicamente sensitiva.

Además, OGPe afirma que, debido a la naturaleza del proyecto, este no utilizaría agua, no generaría aguas usadas ni requería infraestructura sanitaria. Esta esboza que el proyecto cumplía con los parámetros para ubicarse dentro de la zona marítimo terrestre, según el Reglamento Conjunto Núm. 9473, *supra*. Así también, menciona que no hay fundamento legal para requerir un aspecto estético en particular. Añade que el proyecto cuenta con comentarios de las siguientes agencias: Departamento de Recursos Naturales, State Historic Preservation Office, LUMA, Programa de Patrimonio Histórico Edificado, Programa de Arqueología y Etnohistoria del Instituto de Cultura Puertorriqueña, Negociado de Prevención de Incendios, Federal Aviation Administration, ADS, y el Fish and Wildlife Service.  Por todo lo cual, concluye que el proyecto del recurrido cumplió con los parámetros para ser objeto de una *Exclusión Categórica*, y, por consiguiente, que se llevara de forma ministerial el proceso.

Posteriormente, el 10 de abril de 2025 las recurrentes presentaron ante nos una *Urgente Solicitud de Desglose del "Alegato de la OGPe en cuanto a Recurso de Revisión".* Mediante

esta, las recurrentes alegan que la OGPe presentó su alegato en oposición tardíamente, por lo cual solicitan su desglose. No obstante, luego de evaluar el planteamiento, consideramos que el referido alegato se presentó oportunamente. A pesar de haber concedido un término de veinte (20) días, la Regla 63 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63, le concede a la parte recurrida un término de treinta (30) días para presentar su alegato en oposición. El recurrido presentó su alegato el 8 de abril de 2025 dentro del término que provee la referida Regla. Por lo cual, en el ejercicio de nuestra discreción, aceptamos su comparecencia.

De igual forma, el 11 de abril de 2025, la agencia recurrida presentó una *Moción Solicitando Desestimación* por falta de jurisdicción, mediante la cual alega que la recurrente carece de legitimación activa. En este fundamentó sus argumentos en los méritos de la reclamación. Posteriormente, el 21 de abril de 2025 las recurrentes presentaron sus oposiciones a las aludidas mociones de desestimación. Mediante Resoluciones del 2 y 13 de mayo de 2025 decretamos No Ha Lugar las respectivas mociones de desestimación.

Así y con el beneficio de la comparecencia de las partes, procedemos a adjudicar el recurso ante nuestra consideración.

**II.**

**A.**

La Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, 23 LPRA sec. 9011 et seq., provee el marco jurídico para la solicitud, evaluación y concesión de permisos en el Gobierno de Puerto Rico. Díaz Vázquez et als. v. Colón Peña et als., 2024 TSPR 113, 214 DPR __ (2024); Capó Cruz v. Jta Planificación et al., 204 DPR 581, 592 (2020). Según

se deprende de la Exposición de Motivos de la Ley Núm. 161, *supra*, esta fue promulgada para establecer el marco legal y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos para desarrollos de proyectos de construcción en Puerto Rico. Díaz Vázquez et als. v. Colón Peña et als., *supra*; Spyder Media Inc. v. Mun. de San Juan, 194 DPR 547, 552 (2016); Horizon v. Jta. Revisora, RA Holdings, 191 DPR 228, 236 (2014).

A esos fines, el estatuto creó la OGPe, un organismo gubernamental con el propósito de emitir determinaciones finales, permisos, licencias, inspecciones, certificaciones, entre otras. Capó Cruz v. Jta Planificación et al., *supra,* pág. 592; 23 LPRA secs. 9012, 9012d.

En cuanto a la certeza de los permisos, el Artículo 9.10 de la referida Ley Núm. 161-2009, *supra*, 23 LPRA sec. 9019i, establece una presunción de corrección y de legalidad hacia las determinaciones finales y la expedición de permisos por la OGPe. Esta presunción, que cobija la decisión de la agencia, será derrotada, y por consiguiente revocada cuando ocurra lo siguiente:

> [C]uando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso, o en aquellos casos en que la estructura represente un riesgo a la salud o a la seguridad, a condiciones ambientales o arqueológicas.
>
> […]

Por su parte, y atinente a lo que nos ocupa, el Artículo 1.5 de la Ley Núm. 161-2009, *supra*, 23 LPRA sec. 9011, define los siguientes términos:

> […]

**26) "Discrecional" —** Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse.

[…]

**37) "Exclusión Categórica" —** acciones predecibles o rutinarias que en el curso normal de su ejecución no tendrán un impacto ambiental significativo. Se considerará exclusión categórica, además, las acciones que así determine la Junta de Calidad Ambiental mediante reglamento o resolución a esos efectos.

[…]

**48) "Ministerial" —** describe una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada. Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario sólo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (e.g., Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos; el Reglamento Conjunto de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales.

**B.**

Con las normativas anteriores en mente, veamos cual es la autoridad conferida por ley a la OGPe para atender el trámite ante su consideración, respecto a esta controversia.

La Asamblea Legislativa de Puerto Rico adoptó la *Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico*, según enmendada, Ley Núm. 89-2000, 27 LPRA secs. 321 *et seq*.  El estatuto establece que, al palio de la *Ley Federal de Telecomunicaciones*, el gobierno local conserva la autoridad con relación a la ubicación, construcción y modificación de facilidades de telecomunicaciones inalámbricas. 27 LPRA sec. 322. Igualmente, la Ley Núm. 89-2000 propende a un balance de intereses, entre la regulación de la construcción de torres de telecomunicaciones, la seguridad y los derechos de los ciudadanos. Ley Núm. 89-2000, *Exposición de Motivos*; Mun. de San Sebastián v. QMC Telecom, 190 DPR 652, 666 (2014). Para la consecución de dichos fines, se estableció como política pública la co-ubicación de antenas de telecomunicaciones en una misma facilidad y la armonización de las necesidades de cobertura de las empresas de telecomunicaciones con los intereses de la ciudadanía. *Id*.

Al tenor de esta autoridad, además, se facultó a la Junta de Planificación a establecer, por la vía reglamentaria, los requisitos de anclaje, materiales y diseño para la construcción de las torres de telecomunicaciones. 27 LPRA sec. 324. Cónsono con este mandato, se aprobó el *Reglamento Conjunto de Permisos para Obras de Construcción y Uso de Terrenos*, Reglamento Núm. 7951 de 30 de noviembre de 2010; según enmendado por el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9473 de 16 de junio de 2023. En particular, los proponentes de los proyectos de construcción e instalación de facilidades de telecomunicaciones están compelidos

a cumplir los criterios y requisitos del Capítulo 9.11 del Tomo IX, *Infraestructura y Ambiente*, del Reglamento Conjunto Núm. 9473, que trata todo lo relacionado con este tipo de obra. Ello, independientemente de que el área de desarrollo esté o no calificada. La Regla 9.11.1, Sección 9.11.1.1, del Reglamento Conjunto Núm. 9473 dispone que "[e]ste capítulo se adopta al amparo y en armonía con las disposiciones de la Ley 89-2000 conocida como *Ley Sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones en Puerto Rico*".

## C.

Es norma reiterada que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Katiria´s Café, Inc. v. Mun. Aut. San Juan, 2025 TSPR 33, 215 DPR __ (2025); Buxó Santiago v. ELA, et als., 2024 TSPR 130, 215 DPR __ (2024); Otero Rivera v. USAA Fed. Savs. Bank, 2024 TSPR 70, 214 DPR __ (2024); Voilí Voilá Corp. et al v. Mun. Guaynabo, 213 DPR 743, 754 (2024); Hernández Feliciano v. Mun. Quebradillas, 211 DPR 99, 114 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Estos dictámenes cuentan con una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente evidencia para derrotarla. Katiria´s Café, Inc. v. Mun. Aut. San Juan, *supra*; Transp. Sonnell v. Jta. Subastas ACT, 2024 TSPR 82, 214 DPR __ (2024); OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591; Torres Rivera v. Policía de PR, *supra*, pág.

626; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012).

Para así lograrlo, corresponde a la parte que las cuestiona "demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración." Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 128-129 (2019); Camacho Torres v. AAFET, 168 DPR 66, 91 (2006).

Por tanto, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa tiene el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. OEG v. Martínez Giraud, *supra*, pág. 89; González Segarra et al. v. CFSE, 188 DPR 252, 277 (2013). La jurisprudencia ha definido la evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". OEG v. Martínez Giraud, *supra*, pág. 90; Batista, Nobbe v. Jta. Directores, *supra*, pág. 216. Así, el criterio rector en estos casos siempre estará guiado por la razonabilidad de la determinación administrativa luego de considerar el expediente administrativo en su totalidad. OEG v. Martínez Giraud, *supra*, pág. 89.

Para la encomienda de la revisión judicial, la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9675, (en adelante, LPAU) dispone que los tribunales se ceñirán a evaluar (1) si el remedio concedido fue apropiado; (2) si las

determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia. Katiria´s Café, Inc. v. Mun. Aut. San Juan, *supra;* Otero Rivera v. USAA Fed. Savs. Bank, *supra*; Hernández Feliciano v. Mun. Quebradillas, *supra*, pág. 115; Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 839-840 (2021); Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591.

Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Jusino Rodz v. Junta de Retiro, 2024 TSPR 138, 215 DPR ___ (2024); Voilí Voilá Corp. v. Mun. Guaynabo, *supra*, págs. 754-755; Hernández Feliciano v. Mun. Quebradillas, *supra*, pág. 114; Torres Rivera v. Policía de PR, *supra*, pág. 628. Es decir que el criterio administrativo se descartará cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". Hernández Feliciano v. Mun. Quebradillas, *supra*, pág. 116; Capó Cruz v. Jta. Planificación et al., *supra*, pág. 591; Rolón Martínez v. Supte. Policía, *supra*, pág. 36.

A la luz de la normativa esbozada, procedemos a adjudicar.

**III.**

Las recurrentes señalan que la OGPe incidió al adjudicar el Permiso de Construcción Consolidado sin tomar en consideración su comparecencia. Alegan que OGPe erró al llevar a cabo el proceso de manera ministerial, y al no celebrar una vista pública. Además, aducen que OGPe no investigó la veracidad de la información sometida por el recurrido. De igual forma, las recurrentes señalan que la OGPe erró al no notificarles de la solicitud de rectificación que se le pidió a JI Site Developers. Por estar relacionados los errores señalados, procedemos a discutirlos en conjunto.

Surge del caso ante nos que, luego de la intervención de las recurrentes y haber considerado sus planteamientos, JI Site Developers presentó un *Memorial Explicativo* en respuesta a las preocupaciones señaladas. Así mismo, la OGPe indicó que, al evaluar ambas posturas, consideró que el proceso se podía llevar a cabo de manera ministerial, sin la celebración de la vista pública solicitada por las recurrentes.

Los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Conforme a la normativa antes expuesta, se descartará el criterio de los entes administrativos cuando no se pueda hallar fundamento racional que justifique la decisión administrativa.

Particularmente cuando se trata de la aprobación de permisos de construcción por la OGPe, la normativa esbozada establece que las determinaciones gozan de una presunción de corrección y legalidad. Esta será derrotada cuando medie fraude,

dolo, engaño, soborno, la comisión de un delito, o que presente un riesgo para la salud o seguridad.

Consideramos que la aprobación del permiso de construcción consolidado se hizo adecuadamente. La OGPe evaluó los planteamientos de ambas partes. No obstante, consideró que JI Site Developers cumplió con las disposiciones reglamentarias aplicables. Por lo cual, estimó que el proceso se podía llevar a cabo de manera ministerial.

De otro lado, no hay indicio en el expediente de que la agencia haya actuado de forma irrazonable, arbitraria o ilegal. Tampoco se vislumbra que haya mediado alguna de las causales que presenta la Ley Núm. 161-2009, *supra*, para derrotar la presunción de corrección y legalidad que posee el permiso aprobado. Al aplicar las normas de revisión judicial de una decisión administrativa al caso de autos, procede concluir que el dictamen de la OGPe fue razonable y no requiere nuestra intervención.

**IV.**

Por los fundamentos expuestos, confirmamos la determinación de la OGPe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones